UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

RYAN GORDON,

                              Plaintiff,

                    -against-

CITY OF NEW YORK, Police Officer MICHAEL
SAEOSCHKIK, Shield No. 4952, Police Officer
DAVID MOLINA, Shield No. 29666, Police
Officer ERIC DEMERY, Shield No. 13209, Police
Officer YVETTE OQUENDO, Shield No. 28077,
John and Jane Doe Police Officers 1-12,
individually,

                              Defendants.

------------------------------------------------------------------ x

**COMPLAINT**

Jury Trial Demanded

## NATURE OF THE ACTION

1.      This is an action to recover money damages arising out of the violation
of Plaintiff Ryan Gordon's ("Mr. Gordon") rights under the Fourth, Fifth, Sixth and
Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the
Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United
States.

3.      This Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

4.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

1

## JURY DEMAND

5.      Mr. Gordon demands a trial by jury in this action pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

6.      Mr. Gordon lives in Kings County and a substantial part of the events or omissions giving rise to the action occurred in Kings County.

7.      Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant City of New York maintains the New York City Police Department (hereinafter "NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

9.      Defendant NYPD Officer Michael Saeoschkik, Shield No. 4952, of 094 Command, and Defendant John and Jane Doe Officers 1-3 (collectively "Doe Officers 1-3"), at all times relevant herein, were duly sworn officers, employees and agents of the NYPD and were acting under the supervision of said department and

according to their official duties.  Saeoschkik and Doe Officers 1-3 are sued in their individual capacities.

10.    Defendant NYPD Officer David J. Molina, Shield No. 29666, of 094 Command, and Defendant John and Jane Doe Officers 4-6 (collectively "Doe Officers 4-6"), at all times relevant herein, were duly sworn officers, employees and agents of the NYPD and were acting under the supervision of said department and according to their official duties.  Molina and Doe Officers 4-6 are sued in their individual capacities.

11.    Defendant NYPD Officer Eric Demery, Shield No. 13209, of the 13th Precinct, and Defendant John and Jane Doe Officers 7-9 (collectively "Doe Officers 7-9"), at all times relevant herein, were duly sworn officers, employees and agents of the NYPD and were acting under the supervision of said department and according to their official duties.  Demery and Doe Officers 7-9 are sued in their individual capacities.

12.    Defendant NYPD Officer Yvette Oquendo, Shield No. 28077, of the 13th Precinct, and Defendant John and Jane Doe Officers 10-12 (collectively "Doe Officers 10-12"), at all times relevant herein, were duly sworn officers, employees and agents of the NYPD and were acting under the supervision of said department and

according to their official duties.  Oquendo and Doe Officers 10-12 are sued in their individual capacities.

13.    That at all times hereinafter mentioned Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

14.    Each and all of the acts of the Defendants were done by said Defendants while acting within the scope of their employment by Defendant City of New York.

## STATEMENT OF FACTS

15.    At all times relevant to this action Mr. Gordon worked for Chuck Agency, a company which installs and conducts maintenance upon advertisements in New York City.

16.    Chuck Agency obtains the necessary permits and permissions to install the advertisements in the first instance and Mr. Gordon can quickly electronically access the relevant paperwork on his telephone at any moment he is on a site performing Chuck Agency work.

17.    Mr. Gordon's employment with Chuck Agency was to perform maintenance upon advertisements which Chuck Agency had previously installed by washing graffiti off of the advertisements made by unauthorized persons and, when

4

appropriate, smoothing out flaws which appeared since installation due to weather or other forces.

18.     Mr. Gordon uses a brush and a bucket to perform his work and no other tools.

19.     Mr. Gordon does not carry new posters to hang.  He only scrubs and repairs existing posters.

20.     Chuck Agency provides Mr. Gordon with an employee identification card with his name on it showing that he is an employee of Chuck Agency and Mr. Gordon carries the card with him whenever he visits a Chuck Agency site to clean.

21.     Individual Defendants, who are employees of the City Defendant, have inflicted a pattern of violations of Mr. Gordon's civil rights by, inter alia, falsely arresting him then maliciously prosecuting him for his lawful performance of his job, which lawfulness Mr. Gordon is able to demonstrate at all times he is at a Chuck Agency site.

22.     The frequency with which Mr. Gordon's civil rights are violated in this manner reflects the deficiency of the City Defendant's policies and procedures in terms of training its law enforcement agents whether and when probable cause to believe that an individual is committing the offenses of, for example, Criminal Mischief, Making Graffiti or Possession of Graffiti Instruments.

23.     What follows is a description of four separate incidents in which Mr.

Gordon suffered a violation of his civil rights by virtue of the City Defendant's deficient policies and procedures and by virtue of Individual Defendants' unconstitutional acts.  The incidents are described in chronological order.

24.     On September 5, 2014, at approximately noon, Mr. Gordon had just checked on an advertisement near North 12th Street and Berry Street in Kings County.

25.     Mr. Gordon had his brush and bucket, identification as a Chuck Agency employee and electronic access to the permits and papers corresponding to the job showing it to be authorized and lawful.

26.     It was Mr. Gordon's experience and expectation, and the experience and expectation of all Chuck Agency employees, that a police officer questioning him about his activities would inquire about that paperwork in much the same manner a police officer makes such an inquiry about registration and insurance during a vehicle stop.

27.     Defendant Saeoschkik and Doe Defendants 1-3 stopped Mr. Gordon and accused him of making graffiti.

28.     Mr. Gordon had engaged in no such activity and possessed materials which reasonably permitted such an inference.

29.     Mr. Gordon told Saeoschkik and Doe Defendants 1-3 that he had identification and records to show that his work was lawful.

30.     Saeoschkik and Doe Defendants 1-3 refused to look at Mr. Gordon's

identification and records showing the lawfulness of his work.

31.     Saeoschkik and Doe Defendants 1-3 arrested Mr. Gordon.

32.     Mr. Gordon has a heart condition which requires him to have ready access to his medication at all times in the event of a cardiac event. In the event that Mr. Gordon suffers a cardiac event, the swiftness with which he is able to take the medication directly corresponds to the severity of the threat the cardiac event has on Mr. Gordon's life and health.

33.     Mr. Gordon keeps this medicine with him at all times and had it on his person when Saeoschkik and Doe Defendants 1-3 arrested him.

34.     Mr. Gordon explained the nature of his condition and the importance of having quick and ready access to his medication to Saeoschkik and Doe Defendants 1-3.

35.     Saeoschkik and Doe Defendants 1-3, when processing Mr. Gordon at the precinct, seized Mr. Gordon's medication and did not permit him Mr. Gordon to have access to the medication.

36.     Saeoschkik and Doe Defendants 1-3 also refused to discuss a course of action with Mr. Gordon in terms of Mr. Gordon communicating to officials that he was having a cardiac event requiring that the seized medication be brought to him.

37.     This caused great anxiety to Mr. Gordon who was already very scared by the arrest and worried about how it would affect his heart.

38.     Saeoschkik and Doe Defendants 1-3 falsely reported to employees of the Kings County District Attorney's Office that they saw Mr. Gordon unlawfully making graffiti without the necessary permits and permissions.

39.     On the basis of Saeoschkik and Doe Defendants 1-3's false statements, Mr. Gordon was charged with criminal mischief and an administrative code violation.

40.     On September 5, 2014, a state court dismissed the charges.

41.     Mr. Gordon suffered damages as a result of Defendants' actions, including deprivation of liberty, damage to his reputation and emotional trauma.

42.     On November 5, 2014, Mr. Gordon checked on an advertisement near the corner of Wythe Avenue and North 6th Avenue in Williamsburg, Brooklyn.

43.     Mr. Gordon had his brush and bucket, Chuck Agency identification and electronic access to the papers showing his work to be authorized and lawful.

44.     Defendant Molina and Doe Defendants 4-6 stopped Mr. Gordon and accused him of making graffiti.

45.     Mr. Gordon had engaged in no activity and possessed no materials that would reasonably permitted that inference.

46.     Mr. Gordon told Defendant Molina and Doe Defendants 4-6 that he had records and identification to show that his work was lawful.

47.     Molina and Doe Defendants 4-6 refused to look at Mr. Gordon's identification and records.

48.     Molina and Doe Defendants 4-6 arrested Mr. Gordon.

49.     Mr. Gordon informed Molina and Doe Defendants 4-6 about his heart condition and related medication during the arrest.

50.     Molina and Doe Defendants took Mr. Gordon's medication and stated that they would place Mr. Gordon's medication in his vehicle for safekeeping while Mr. Gordon was incarcerated.

51.     Mr. Gordon told Molina and Doe Defendants 4-6 why that would not address his serious medical need.

52.     Molina and Doe Defendants 4-6 refused to respond to Mr. Gordon's explanation of his serious medical need.

53.     Mr. Gordon experienced great anxiety during his incarceration as a result of Molina and Doe Defendants 4-6's refusal to permit him access to his medication, to keep the medication at the precinct so that it was readily available, or to discuss some sort of reasonable accommodation by which Mr. Gordon could obtain his medication in the event of a cardiac arrest during his incarceration.

54.     Mr. Gordon's supervisor at Chuck Agency paid a personal visit to the precinct shortly after Mr. Gordon arrived there.

55.     Mr. Gordon's supervisor brought hard-copy papers with him demonstrating that Mr. Gordon's work had been authorized and lawful in order to exonerate Mr. Gordon.

56.    Molina and Doe Defendants 4-6 refused to look at Mr. Gordon's supervisor's paperwork.

57.    Molina and Doe Defendants 4-6 falsely reported to employees of the Kings County District Attorney's Office that Mr. Gordon unlawfully made graffiti without the necessary permit and permission.

58.    On the basis of Molina and Doe Defendants 4-6's false statements, Mr. Gordon was charged with criminal mischief and graffiti-related offenses.

59.    When Mr. Gordon returned to his vehicle post-arraignment, his medication was not in the vehicle.

60.    On information and belief, Molina and Doe Defendants 4-6 not only refused to provide a reasonable accommodation for Mr. Gordon's medication during his incarceration, but they maliciously and intentionally disposed of the medication, subjecting him to a still longer period of time during which he was vulnerable to his serious medical need.

61.    Mr. Gordon was forced to replace his medication.

62.    On December 9, 2014, a state court dismissed the charges against Mr. Gordon.

63.    Mr. Gordon suffered damages as a result of Molina and Doe Defendants 4-6's actions, including deprivation of liberty, damage to his reputation and emotional trauma.

64. On March 19, 2015, Mr. Gordon checked on an advertisement at 112 West 25th Street in the 13th Precinct.

65. Mr. Gordon had with him his brush and bucket, identification and electronic access to the Chuck Agency records demonstrating that the work he was performing was authorized and lawful.

66. Defendant Officer Demery and Doe Officers 7-9 approached Mr. Gordon and stated that Mr. Gordon was under arrest.

67. Mr. Gordon told Demery and Doe Officers 7-9 that he had identification and records indicating that he was performing authorized and lawful work.

68. Demery and Doe Officers 7-9 refused to look at the identification and records showing that Mr. Gordon's work was authorized and lawful.

69. Demery and Doe Officers 7-9 arrested Mr. Gordon.

70. Demery and Doe Officer 7-9 falsely reported to employees of the New York County District Attorney's Office that he saw Mr. Gordon installing advertisements without the necessary permit and permission.

71. On the basis of Demery's false statements, Mr. Gordon was charged with criminal mischief and making graffiti.

72. On May 26, 2015, a state court dismissed the charges.

73. Mr. Gordon suffered damages as a result of Demery and Doe Officer 7-9's actions, including deprivation of liberty, damage to his reputation and emotional trauma.

74. The final incident that is the subject of this Complaint occurred on April 24, 2015, as Mr. Gordon checked an advertisement again in the vicinity of 112 West 25th Street and was arrested by Oquendo and Doe Officers 10-12.

75. Mr. Gordon indicated that he had identification and records indicating that his work was authorized and lawful.

76. Oquendo and Doe Officers 10-12 refused to look at the identification and records.

77. Mr. Gordon explained to Oquendo and Doe Officers 10-12 that he had documents to show that his employer had directed him to do his work and that he had identification and paperwork showing it was lawful.

78. Oquendo and Doe Officers 10-12 would not look at Mr. Gordon's documents showing the lawfulness of his work.

79. Oquendo and Doe Officers 10-12 arrested Mr. Gordon.

80. Oquendo and Doe Officers 10-12 falsely reported to employees of the New York County District Attorney's Office that Oquendo saw Mr. Gordon unlawfully installing advertisements without the necessary permit and permission.

81. Oquendo and Doe Officers 10-12 falsely reported that they verified with

the President of a company named 114 Builders Corporation, which on information and belief has not been in business since 2009, that Mr. Gordon did not have identification and records to perform the work.

82. On the basis of Oquendo and Doe Officers 10-12's false statements, Mr. Gordon was charged with criminal mischief and graffiti-related offenses.

83. On August 28, 2015, a state court dismissed the charges on the prosecutor's motion.

84. Mr. Gordon suffered damages as a result of Defendants' actions, including deprivation of liberty, damage to his reputation and emotional trauma.

85. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

86. The aforesaid incident is not an isolated incident. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated

occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts.   As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's IAB and the CCRB) that many NYPD officers, including the Defendants, arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals and engage in a practice of falsification of evidence in an attempt to justify the false arrest.

87.    The Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, has written that

> [i]nformal inquiry by the [C]ourt and among judges of this [C]ourt, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the [NYPD] . . . [T]here is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the [C]ity approving illegal conduct of the kind now charged.

Colon v. City of N.Y., Nos. 9 Civ. 8, 9 Civ. 9, 2009 WL 4263362, at *2 (E.D.N.Y. November 25, 2009).

88.    Former Deputy Commissioner Paul J. Browne, as reported in the press on January 20, 2006, stated that NYPD commanders are permitted to set

"productivity goals," permitting an inference of such a custom or policy encouraging deprivations of individuals' constitutional rights in cases such as this one.

89.    Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights.  Despite such notice, Defendant City of New York has failed to take corrective action.  This failure caused Individual Defendants in this case to violate Mr. Gordon's constitutional rights.

90.    Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

91.    All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

92.    All of the aforementioned acts deprived Mr. Gordon of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

93.     The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

94.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

95.     As a result of the foregoing, Mr. Gordon is entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
### 42 U.S.C. § 1983

96.     Mr. Gordon repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

97.     Defendants, by their conduct toward Mr. Gordon alleged herein, violated Mr. Washington's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

98.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Gordon of his constitutional rights.

99.     As a direct and proximate result of Defendants' unlawful conduct, Mr. Gordon sustained the damages hereinbefore alleged.

## SECOND AND THIRD CLAIMS
## FALSE ARREST AND MALICIOUS PROSECUTION

100.    Mr. Gordon repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

101.    Defendants, by their conduct toward Mr. Gordon alleged herein, violated Mr. Gordon's rights guaranteed by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States.

102.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Gordon of his constitutional rights. Defendants did not have reasonable suspicion or probable cause to believe that Mr. Gordon had committed a crime in the first instance.

## FOURTH AND FIFTH CLAIMS
## FABRICATION OF EVIDENCE AND DENIAL OF FAIR TRIAL

103.    Mr. Gordon repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

104.    Defendants violated Mr. Gordon's right under 42 U.S.C. § 1983 to be to be free from deliberate indifference to a serious medical need under the Fourteenth Amendment of the United States Constitution.

105.    Defendants fabricated evidence against Mr. Gordon and deprived him of a fair trial by corrupting the truth seeking function of the trial process.

106.    Defendants' false statements against Mr. Gordon was likely to influence a jury and Mr. Gordon suffered a deprivation of liberty as a result.

107.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Gordon of his constitutional rights.

108.    As a direct and proximate result of Defendants' unlawful conduct, Mr. Gordon sustained the damages hereinbefore alleged.

## SIXTH CLAIM
## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED

109.    Mr. Gordon repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

110.    Defendants violated Mr. Gordon's right under 42 U.S.C. § 1983 to be to be free from deliberate indifference to a serious medical need under the Fourteenth Amendment of the United States Constitution.

111.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Gordon of his constitutional rights.

112.    As a direct and proximate result of Defendants' unlawful conduct, Mr. Gordon sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
## FAILURE TO INTERVENE

113.    Mr. Gordon repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

114.    Individual Defendants actively participated in the aforementioned unlawful conduct but also observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

115.    Accordingly, Individual Defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

116.   Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Gordon of his constitutional rights.

117.   As a direct and proximate result of Defendants' unlawful conduct, Mr. Gordon sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
## MONELL CLAIM

118.   Mr. Gordon repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

119.   Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

120.   The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Mr. Gordon's rights as described herein.  As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the

Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

121. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

122. The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Mr. Gordon's safety, well-being and constitutional rights.

123. The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Mr. Gordon as described herein.

**PRAYER FOR RELIEF WHEREFORE,** Mr. Gordon respectfully request the following relief:

A. An order entering judgment for Mr. Gordon against Defendants on each of their claims for relief;

B. Awards to Mr. Gordon for compensatory damages against all Defendants, jointly and severally, for their violation of the Fourth, Fifth, Sixth and Fourteenth Amendment rights of Mr. Gordon, the amount to be determined at jury trial, which Mr. Gordon respectfully demands pursuant to FRCP 38;

C. Awards to Mr. Gordon of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to the constitutional rights and welfare of Mr. Gordon, the amount to be determined at jury trial, which Mr. Gordon respectfully demands pursuant to FRCP 38;

D. Awards to Mr. Gordon of the costs of this action, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED:      January 13, 2016
            New York, New York

                              _____/s_____

                              Ryan Lozar
                              305 Broadway, 9th Floor
                              New York, New York 10007
                              (310) 867-1562
                              ryanlozar@gmail.com

                              *Attorney for Plaintiff*

22